IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Senior Judge John L. Kane

Civil Action No. **1:11-cv-03171-AP**

**WILDEARTH GUARDIANS**,
**POWDER RIVER BASIN RESOURCE COUNCIL**, and
**SIERRA CLUB**,

      Plaintiffs,

v.

**UNITED STATES FOREST SERVICE**, a federal agency within the U.S. Department of Agriculture,
**THOMAS TIDWELL**, in his official capacity as Chief of the United States Forest Service,
**MARIBETH GUSTAFSON**, in her official capacity as the Acting Regional Forester of the United States Forest Service, and
**BRIAN FEREBEE**,[1] in his official capacity as the Deputy Regional Forester of the United States Forest Service,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**Kane, J.**

WildEarth Guardians, Powder River Basin Resource Council, and Sierra Club brought this action against the United States Forest Service, Chief Thomas Tidwell, Regional Forester Maribeth Gustafson, and Deputy Regional Forester Brian Ferebee for allegedly violating several environmental laws by approving a United States Bureau of Land Management ("BLM") lease for surface coal mining in the Thunder Basin National Grassland in eastern Wyoming.

---

[1] Because Brian Ferebee has replaced Glen Casamassa as the Deputy Regional Forester of the U.S. Forest Service, he replaces Mr. Casamassa as a defendant in this case. *See* Fed. R. Civ. P. 25.

1

Defendants move to transfer this case to the District of Wyoming pursuant to 28 U.S.C. § 1404(a). Because Plaintiffs could have brought this action in the District of Wyoming and considerations of convenience and the interest of justice weigh in favor of transfer, Defendants' motion is GRANTED.[2]

## BACKGROUND

In March 2010, the BLM issued its decision to lease 3,243 acres of federal coal located in the Powder River Basin of Wyoming, known as the South Porcupine Tract. Of the South Porcupine Tract's total acreage, 1,638 acres are located within the Thunder Basin National Grassland. Because the Forest Service has jurisdiction over the surface rights of this portion of the South Porcupine Tract, the Forest Service is required to evaluate the proposed lease's Environmental Impact Statement ("EIS"), and then either approve or deny the proposed lease. *See* 30 U.S.C. § 201(a)(3)(A)(iii).

Following this mandate, on July 14, 2011, a Wyoming-based Forest Supervisor issued the Forest Service's Record of Decision ("ROD") approving the proposed lease within the National Grassland. Plaintiffs timely filed an administrative appeal of the South Porcupine ROD, and that appeal was ultimately denied by the Acting Regional Forester in the Rocky Mountain Regional Office of the United States Forest Service in Golden, Colorado. There is no dispute that the denial of the administrative appeal constitutes the final agency action giving rise to the lawsuit currently before me.

---

[2] The parties have fully briefed this motion, but Plaintiffs seek leave to file a surreply addressing new factual allegations contained in Defendants' reply. I have reviewed Plaintiffs' motion and their proposed brief. Because their arguments have no bearing on my resolution of this motion, Plaintiffs' Motion for Leave to File Surreply (doc. 18) is DENIED.

In this suit, Plaintiffs allege that the Forest Service's approval of the proposed leases violated several environmental statutes. They seek a declaration that Defendants' actions are in violation of the Surface Mining Control and Reclamation Act ("SMCRA"), the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), 15 U.S.C. § 1600 *et seq.*, and the Administrative Procedure Act ("APA"), and they request that I set aside the challenged decision and enjoin any further action on the proposed lease until Defendants have complied with their statutory obligations.

On February 2, 2012, Defendants filed a Motion to Transfer Venue (Doc. 6). Defendants contend that, although venue is proper here, this case should be transferred to Wyoming pursuant to 28 U.S.C. § 1404(a), because the case is properly venued in the District of Wyoming and transferring venue would be in the interests of justice and the convenience of the parties and witnesses.

## JURISDICTION AND VENUE

Plaintiffs assert a variety of claims against the United States under NEPA, 42 U.S.C. § 4321 *et seq.*, NFMA, 15 U.S.C. § 1600 *et seq.*, SMCRA, 30 U.S.C. § 1201 *et seq.*, and the APA, 5 U.S.C. § 701 *et seq.*. Accordingly, I have subject matter jurisdiction pursuant to both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346 (United States as defendant). Furthermore, because Defendant Brian Ferebee, the Deputy Regional Forester of the United States Forest Service in the Rocky Mountain Regional Office in Golden, Colorado, resides within this district, venue is proper under 28 U.S.C. § 1391(e)(1).

## LEGAL STANDARD

I am vested with broad discretion to transfer a case to a venue in which it could have originally been brought if I find that such a transfer would be in the "interest of justice" and "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Any party, and even the court *sua sponte*, can move for transfer of an action under § 1404(a). In this case, because Defendants moved to have the case transferred pursuant to § 1404(a), they bear the burden of establishing that transfer is proper. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 151 (10th Cir. 1991).

To meet this burden, Defendants must make two showings: (1) Defendants must establish that Plaintiffs could have originally filed the suit in the proposed transferee district, the District of Wyoming, *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (superseded by statute on other grounds); and (2) Defendants must show that considerations of convenience and the interest of justice weigh in favor of transfer to Wyoming, *Chrysler Credit Corp.*, 982 F.2d at 1515.[2] Unless Defendants demonstrate that considerations of convenience and the interest of justice strongly favor transfer to Wyoming, Plaintiffs' choice of forum should not be disturbed absent compelling circumstances. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). My balancing of these interests is informed by, but not necessarily limited to, consideration of the following factors: (1) Plaintiffs' choice of forum; (2) the accessibility of witnesses and other sources of proof; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties

[2] Plaintiffs convert this to a three-part inquiry, separating "considerations of convenience" from "interests of justice." Because the *Chrysler* factors pertain to both considerations of convenience and the interest of justice, however, Defendants need not make independent showings pertaining to each element.

that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious, and economical. *Chrysler Credit Corp.*, 928 F.2d at 1516.

ANALYSIS

As a threshold matter, it is uncontested that venue is proper in the District of Wyoming. *See* 28 U.S.C. § 1391(e)(1). The lease that Plaintiffs challenge is located in the Thunder Basin National Grassland, which lies entirely within the District of Wyoming, and the majority of actions surrounding the challenged ROD occurred in Wyoming. Because "a substantial part of the events or omissions giving rise to the claim occurred" within the District of Wyoming, it would be a proper venue. *Id.* § 1391(e)(1)(B).

Having made this determination, I turn my attention to considering whether considerations of convenience and the interest of justice weigh in favor of transfer to Wyoming. *Chrysler Credit Corp.*, 982 F.2d at 1515. In arguing whether this action should be transferred, the parties focus on four factors: (1) Plaintiffs' choice of forum; (2) difficulties that may arise from congested dockets; (3) the advantage of having a local court determine questions of local law; and (4) all other considerations of a practical nature that make a trial easy, expeditious, and economical. I consider each in turn.

*1.Plaintiffs' Choice of Forum*

As a general rule, a "plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965. Because Plaintiffs' principal places of business are not located in Colorado and the vast majority of the operative facts took place in Wyoming, however, Plaintiffs' choice of forum

in entitled to little weight.  *E.g.*, *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).  Thus, notwithstanding the fact that the final agency action took place in Colorado, this factor weighs in favor of transfer.

### *2. Difficulties that May Arise from Congested Dockets*

The parties in this case cite two statistical considerations relevant to evaluating the relative congestions of court dockets: the number of pending cases per judge, and the time from filing to disposition.  *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).   The average number of filings per judge in the District of Wyoming is 245, compared with 515 filings per judge in Colorado.  U.S. Courts, *Federal Management Statistics*, 79, 86 (Sept. 2011), *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2011/District FCMS Profiles September 2011.pdf&page=1.  The median time from filing to disposition of civil cases in Colorado is 5.7 months, but it is 8.6 months in Wyoming.  *Id.*  Although the average number of pending cases weighs in favor of transfer, the time from filing to disposition does not.  Accordingly, the relative congestion of the dockets is a wash and has no sway in my analysis.

### *3. The Advantage of Having a Local Court Determine Questions of Local Law*

It is axiomatic that "[t]here is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).  Accordingly, when a dispute arises regarding a land management project that directly implicates the local economy, local regulatory agencies, and the local environment, it is common for such a dispute to be heard in the jurisdiction where the land is located. *See, e.g.*, *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 88 (D.D.C. 2004) ("Land is a localized interest because its management directly

touches local citizens."). When a land management project is of national significance, however, it is not considered "an isolated, local environmental issue." *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13 (D.D.C. 2000). Accordingly, the national significance of a land management project can offset a minimal local interest in a § 1404 analysis. *Nat'l Ass'n of Home Builders v. U.S. E.P.A.* ("*NAHB*"), 675 F. Supp. 2d 173, 178 (D.D.C. 2009).

Plaintiffs argue that Defendants' emphasis on the localized interest in this case is misplaced. Plaintiffs contend that coal leasing in the Thunder Basin National Grassland is an issue of regional and national significance, as coal from the Powder River Basin is transported across the nation and its burning affects air quality across the nation. Although creative, Plaintiffs' argument ignores the nature of the local interest in the challenged agency action.

This is not a case in which the relevant agency action would not have any "major impact on local economic, political and environmental interests." *NAHB*, 675 F. Supp. 2d at 178. Not only is local land involved in the leasing of the South Porcupine Tract, its management particularly affects Wyoming citizens. The challenged project would have substantial impacts on the local economy, and it is particularly relevant to the State of Wyoming given the State's regulatory involvement in the project. *See* Affidavit of Ryan M. Lance (Doc. 17-A) (explaining that various Wyoming regulatory agencies will be involved in the management of the project). Considered as a whole, the magnitude of these local interests weigh heavily in favor of transfer. *See Trout Unlimited*, 994 F. Supp. 13, 17 (D.D.C. 1996) (transferring venue given "the impact that . . . [the] action will have upon the affected lands, waters, wildlife and people of [the transferee] state").

### *4. Other Considerations of a Practical Nature*

Finally, Plaintiffs argue the transfer will significantly inconvenience them. Specifically, Plaintiffs argue that transfer would result in increased costs for Plaintiffs, and that transfer would undermine representation by the University of Colorado School of Law's Natural Resources Clinic. These arguments are unconvincing. Although transfer may result in a $100 fee for *pro hac vice* admittance in the District of Wyoming if Plaintiffs retain the same counsel, that fee is not substantial enough to indicate that the transfer should not take place, especially when compared with the localized interest in having the case adjudicated in Wyoming.

Furthermore, with respect to the student attorneys' participation in this case, "the location and convenience of counsel is not a relevant factor" in my analysis. *See Bailey v. Union Pacific R. Co.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005). Even if it was a relevant factor, the students can seek *pro hac vice* status by seeking out an active member of the Wyoming State Bar who would be willing to supervise their participation in this case. *See* Rules of the Supreme Court of Wyoming Providing for Organization and Government of Bar Association and Attorneys at Law of the State of Wyoming, Wyo. R. 12(b)(1), *available at* http://courts.state.wy.us/CourtRules_Entities.aspx?RulesPage=OrganizationAndGovernmentOfWyoBarAssociation.xml.

### CONCLUSION

For the foregoing reasons, Defendants have met their burden of establishing that considerations of convenience and the interests of justice strongly favor transfer to the District of Wyoming. Accordingly, Defendants' Motion to Transfer (doc. 8) is GRANTED, and the case shall be transferred to the District of Wyoming. Furthermore, Plaintiffs' Motion for Leave to

File Surreply (doc. 18) is DENIED.

Dated: April 24, 2012                                          BY THE COURT:

                                                               **s/John L. Kane**
                                                               Senior U.S. District Court Judge